FILED
2021 APR 5 PM 12:55
CLERK
U.S. DISTRICT COURT

**UNITED STATES DISTRICT COURT**
**DISTRICT OF UTAH, CENTRAL DIVISION**

| | |
|---|---|
| **MARILYN C.,**<br><br>**Plaintiff,**<br><br>**vs.**<br><br>**ANDREW SAUL,**<br>**Commissioner of Social Security,**<br><br>**Defendant.** | **Case No. 2:20-cv-00339-DBP**<br><br>**MEMORANDUM DECISION & ORDER**<br><br>**Magistrate Judge Dustin B. Pead** |

Pursuant to 42 U.S.C. § 405(g), Plaintiff Marilyn C.[1] ("Plaintiff") seeks judicial review of the Commissioner of Social Security's decision denying her claim for disability insurance benefits under Title II of the Social Security Act. Now, after careful review of the administrative record, the parties' briefs and arguments and the relevant law, the undersigned concludes that the Commissioner's decision is supported by substantial evidence and free of harmful legal error. Accordingly, the Commissioner's decision is AFFIRMED.[2]

---

[1] Based on privacy concerns regarding sensitive personal information the Court will not use Plaintiff's last name. Privacy concerns are inherent in many of the Federal Rules. *See* Fed. R. App. P. 25(a)(5); Fed. R. Civ. P. 5.2; Fed. R. Crim. P. 49.1; Bankr. P. 9037.

[2] The parties in this case consented to United States Magistrate Judge Dustin B. Pead conducting all proceedings, including entry of final judgment, with appeal to the United States Court of Appeals for the Tenth Circuit. (ECF No. 17); *See* 28 U.S.C. § 636(c), Fed. R. Civ. P. 73.

## I. BACKGROUND

On July 27, 2017, Plaintiff filed a Title II application alleging a disability beginning November 27, 2012. (Tr. 47, Tr. 248-49.) [3] Plaintiff's claims were initially denied on October 17, 2017, and again upon reconsideration on December 21, 2017. (Tr. 183-88; Tr. 69-109.) Thereafter, Plaintiff filed a written request for hearing, and on November 6, 2018, Plaintiff and her attorney appeared and testified at a hearing before an Administrative Law Judge ("ALJ"). (Tr. 69-109); *see* 20 C.F.R. § 404.929.

On April 24, 2019, the ALJ rendered a written decision consistent with the five-step sequential evaluation process. (Tr. 47-62); *See* 20 C.F.R. § 416.920 (describing the five-step process). At step two, the ALJ found that Plaintiff had the severe impairments of fibromyalgia, temporomandibular joint dysfunction syndrome, bilateral osteoarthritis of the temporomandibular joints, migraines, sleep apnea, depression, post-traumatic stress disorder and anxiety. (Tr. 51-52.) After finding that Plaintiff's impairments did not meet or equal a listed impairment, *see* 20 C.F.R. § 404, Subp P. Appx 1, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to:

> perform light work as defined in 20 C.F.R. § 404.1567(b), except that she was limited to simple, routine tasks. She could not have more than superficial and non-collaborative interaction with coworkers, and she could have no interaction with the public. She was limited to low-stress work, defined as involving no more than occasional simple decision-making and no more than occasional changes to the workplace setting and routine.

(Tr. 54-55.) At step four, the ALJ concluded that Plaintiff could not perform her past work as a bus driver. (Tr. 61; Tr. 102.) At step five, the ALJ found that Plaintiff could perform other jobs

[3] "Tr." refers to the transcript of the record before the court.

that existed in significant numbers in the national economy, such as cannery worker, small products assembler and agricultural sorter. (Tr. 61-62.) Based thereon, the ALJ denied Plaintiff's application for benefits finding that she was not disabled under the regulations. (Tr. 62.)

Thereafter, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision for purposes of review. (Tr. 1-7.) Plaintiff's appeal to this Court followed. (ECF No. 3.)

## II. STANDARD OF REVIEW

This Court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotations and citation omitted). If supported by substantial evidence, the Commissioner's findings are conclusive. *Biestek v. Berryhill,* 139 S. Ct. 1148, 1152, 203 L. Ed. 2d 504 (2019) (*quoting* 42 U.S.C. § 405(g)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084.

On review, this Court may "neither reweigh the evidence nor substitute [its] judgment for that of the [ALJ]." *Casias v. Sec'y of Health & Human Servs.,* 933 F.2d 799, 800 (10th Cir. 1991). Rather, where the evidence as a whole can support either the agency's decision or an award of benefits, the agency's decision must be affirmed. *Ellison v. Sullivan*, 929 F.2d 534, 536 (10th Cir. 1990); *accord Biestek*, 139 S. Ct. at 1157 (the court defers to the ALJ, "who has seen the hearing up close"). Ultimately, if substantial evidence supports the ALJ's findings and the correct legal standards were applied, "the Commissioner's decision stands and the plaintiff is not

entitled to relief." *Allison v. Saul,* U.S. Dist. LEXIS 214364 *2 (D. N. Mex. Nov. 16, 2020) (*citing Langley v. Barnhart,* 373 F.3d 1116, 1118 (10th Cir. 2004)).

## III. DISCUSSION

At step five of the sequential evaluation process, the Commissioner bears the burden of proving that a "claimant has the residual functional capacity to do other work [existing in significant numbers in] the national economy." 20 C.F.R. § 404.1566(a); *Barnhart v. Thomas,* 540 U.S. 20, 24, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987). On appeal Plaintiff raises two main arguments, both of which relate to the ALJ's step five findings. First, Plaintiff contends there is a conflict between the vocational expert's testimony, the Dictionary of Occupational Titles and the agency's Program Operations Manual System. Second, Plaintiff asserts the ALJ failed to use reliable evidence to establish that there were a significant number of jobs in the national economy that Plaintiff could perform. Both issues are addressed below.[4]

---

[4] At the outset, the Commissioner argues that both step five claims are waived because at the administrative hearing Plaintiff, while represented by counsel, failed to mount an objection to the vocational expert's testimony or to the reliability of the evidence offered. Yet given apparent disagreement on this issue, the Court proceeds to the substance of Plaintiff's claims. *See Gibbons v. Barnhart,* 85 Fed. Appx. 88, 93 (10th Cir. Dec. 18, 2003) (unpublished) (*citing Carey v. Apfel*, 230 F.3d 131, 146-47 (5th Cir. 2000) ("claimants should not be permitted to scan the record for implied or unexplained conflicts between the specific testimony of an expert witness and the voluminous provisions of the [Dictionary of Occupational Titles], and then present that conflict as reversible error, when the conflict was not deemed sufficient to merit adversarial development in the administrative hearing."); *But see Haddock v. Apfel*, 196 F.3d 1084,1090 (10th Cir. 1999) (requiring Plaintiff to cross-examine the vocational expert would improperly "shift the burden to the claimant").

**1. <u>Plaintiff Fails to Establish Conflict Between the Vocational Expert's Testimony , the Dictionary of Occupational Titles and the Agency's Program Operation Manual System.</u>**

When determining whether a claimant can perform other work in the national economy, the ALJ may take administrative notice of a number of sources including the Dictionary of Occupational Titles ("DOT"). *See* 20 C.F.R. § 404.1566. Additionally, an ALJ may utilize a vocational expert ("VE") and rely on the expert's testimony as a basis for the ALJ's conclusions. *Id.*; *Holt v. Colvin*, 2015 U.S. Dist. LEXIS 187061 *5 (D. N. Mex. Apr. 16, 2015) (ALJ may utilize VE to "supply an opinion about the claimant's ability to perform work in the national economy.").

At the November 6, 2018 administrative hearing, the VE testified that an individual with Plaintiff's limitations could perform the requirements of representative occupations such as cannery worker, small products assembler and agricultural sorter. (Tr. 61-62*;* Tr. 103.) When asked by the ALJ, the VE testified that his answers were "consistent with the DOT" and based on his "20 plus years' of experience." [5] (Tr. 103.)

**<u>Dictionary of Occupational Titles</u>**

It is well established "that the agency accepts definitions in the Dictionary of Occupational Titles as reliable evidence . . . ." *Gallegos v. Saul,* 2020 U.S. Dist. LEXIS 166217 *29 (D. N. Mex. Sept. 11, 2020) (*citing Bowman v. Astrue,* 511 F.3d 1270, 1273 (10th Cir. 2008)). The DOT, however, uses a "different and considerably more extensive classification scheme for skill requirements than the agency's regulations." *Haddock,* 196 F.3d at 1089. As a

[5] Earlier in the transcript the VE states he had "28-plus years' of experience." (Tr. 102.)

result, "[a]ll kinds of implicit conflicts are possible and the categorical requirements listed in the DOT do not and cannot satisfactorily answer every such situation." *Gibbons,* 85 Fed. Appx. at 93 (*citing Carey*, 230 F.3d at 146-147).

Plaintiff contends a conflict exists between the VE's testimony and the DOT with regard to the cannery worker, small-production assembler and agricultural-produce sorter occupations. *See* DOT 529.686-014 "Cannery Workers"; DOT 706.684-022 "Assembler Small Products I (any industry)"; DOT 529.687-186 *"*Sorter, Agricultural Produce". Specifically, Plaintiff argues the DOT's cannery worker listing requires "performing a *combination* of duties including canning, freezing preserving, or packing food products" and is therefore in conflict with Plaintiff's limitation to "no more than occasional simple decision-making and no more than occasional changes to the workplace setting and routine." (ECF No. 37 at 7.) Simply quoting tasks verbatim from the DOT, however, does not create a conflict and here Plaintiff fails to explain how the DOT's tasks require more than the simple decision making or occasional changes to workplace setting allowed under the RFC. *See Hackett v. Barnhartt,* 395 F.3d 1168, 1176 (10th Cir. 2005) (finding "simple and routine work task" limitation consistent with General Educational Development level two reasoning).

Likewise, Plaintiff's claim that the small products assembler and agricultural produce sorter jobs require more social contact than permitted under the RFC is undeveloped. Again, simply picking tasks from the DOT narrative that appear to conflict with Plaintiff's limitations does not establish a basis for substituting Plaintiff's lay reading of the DOT with that of the VE's professional judgment. When asked, the VE testified that no conflict existed and explained that the DOT does not separate out different types of interpersonal interactions. (Tr. 102). As a result, the ALJ relied upon the VA's testimony and his twenty plus years of experience to conclude that

the occupations identified were consistent with Plaintiff's RFC. (Tr. 102.) *See* SSR 00-4p (permitting an ALJ to rely on vocational expert's experience even when there is a conflict stating that "[i]nformation about a particular job's requirement or about occupations not listed in the DOT may be available in other reliable publications, information obtained directly from employers, or from a VE's or VS's experience in job placement or career counseling.").

**ii) <u>Agency Policy</u>**

The Agency's Program Operations Manual System ("POMS"), is a set of "policies issued by the Administration to be used in processing claims." *McNamar v. Apfel,* 172 F.3d 764, 766 (10th Cir. 1999). Generally, the Court defers to POMS unless the policy is "arbitrary, capricious, or contrary to law." *Ramey v. Reinertson,* 268 F.3d 955, 964 (10th Cir. 2001).

Under agency policy, "work[ing] in coordination with or proximity to others without being (unduly) distracted by them" is listed as one of fourteen abilities critical to performing unskilled work. POMS DI 25020.010(B)(3)(g). [6] Plaintiff asserts this policy conflicts with her

---

[6] In total, the fourteen mental abilities listed as critical for performing unskilled work are the abilities to: remember work-like procedures (locations are not critical); understand and remember very short and simple instructions; carry out very short and simple instructions; maintain attention for extended periods of 2-hour segments (concentration is not critical); maintain regular attendance and be punctual within customary tolerances (these tolerances are usually strict) maintaining a schedule is not critical; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being (unduly) distracted by them; make simple work-related decisions; complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods (these requirements are usually strict); ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without (unduly) distracting

limitation to "superficial and non-collaborative interaction with coworkers." (Tr. 54.) But upon review there is nothing in the policy indicating that the inability to perform one of the fourteen listed abilities renders a claimant entirely incapable of performing all unskilled occupations, and the Court finds Plaintiff's claim to be without support.

Under agency policy, a "substantial loss of ability to meet any of the basic demands of unskilled work" would justify a finding of disability. POMS DI 25020.010(A)(3). The basic demands of unskilled work include the ability to "understand, carry, out and remember simple instructions; make judgments that are commensurate with the functions of unskilled work, i.e., simple work-related decisions; respond appropriately to supervision, coworkers and work situations; and deal with changes in routine work setting." POMS DI 25020.010(A)(3); *see also* 20 C.F.R. § 404.1522 (defining basic work activities). But POMS also clearly states that "'[s]ubstantial loss' cannot be precisely defined" and indicates a determination of substantial loss "requires professional judgment on the basis of the evidence in file in each case." POMS DI 25020.010(A)(3)(b).

Despite this admonition, Plaintiff appears to argue that a claimant is disabled if she cannot perform all of the fourteen mental demands listed for unskilled work under POMS DI 25020.010(B)(3). To accept this position, however, would require the Court to conclude that although "substantial loss" *cannot* be precisely defined, *see* POMS DI 25020.010(A)(3)(b), it *has* been precisely defined, *see* POMS DI 25020.010(B)(3). Further, Plaintiff's claim requires the strained conclusion that an arguable deficiency with respect to just one of the listed demands

---

them or exhibiting behavioral extremes; respond appropriately to changes in a (routine) work setting; be aware of normal hazards and take appropriate precautions. *See* POMS DI 25020.010(B)(3)(a-n).

supports a finding of disability. Yet, a more reasonable interpretation of the policy is that because "substantial loss" cannot be defined, only a full range of unskilled work would require all of the listed abilities. Thus, if an ALJ found a claimant capable of "unskilled work" without any additional mental limitations, the claimant could perform all the abilities listed under POMS DI 25020.010(B)(3). *See generally Vamvakerides v. Colvin,* 2016 U.S. Dist. LEXIS *22-23 (D.N.M. April 7, 2016); *Sherman v. Berryhill,* 2019 U.S. Dist. LEXIS 98616 *37 (D.N.M. June 12, 2019).

Overall, Plaintiff fails to identify and provide support for a clear and established conflict between the VE's testimony, the DOT and POMS. As a result, it was appropriate for the ALJ to rely on the expert's testimony as support for the ALJ's conclusions. *See Gibbons,* 85 Fed. Appx. at 93 (*citing Carey*, 230 F.3d at 146-147).

**2. Plaintiff Fails To Establish That The VE's Job Numbers Testimony Is Unreliable.**

The critical inquiry at step five of the sequential evaluation is "whether jobs exist in the national economy in significant numbers that the claimant could perform in spite of [her] impairments, and the ALJ can consider both jobs data drawn from the DOT as well as from the testimony of the VE in making this determination." *Washington v. Comm'r of Soc. Sec.* 906 F.3d 1353, 1360 (11th Cir. 2018).

Plaintiff broadly argues that once the VE indicated the Occupational Employment Statistics Quarterly ("OEQ") as the basis for his job number testimony, his "confession raise[d] all the concerns" needed to conclude that his testimony was unreliable.[7] In so arguing, Plaintiff

---

[7] At the hearing, Plaintiff's counsel asked the VE the following:

Q: First of all, what's the source for your job numbers your [sic] cited [?]

relies upon case law from the Seventh and Second circuits criticizing the OEQ's reliance on the "equal distribution method." [8] *See Alaura v. Colvin,* 797 F.3d 503, 507 (7th Cir. 2015); *Brown v. Colvin,* 766 F.3d 702, 709 (7th Cir. 2014); *Brault v. Soc. Sec. Admin. Comm'r*, 683 F.3d 443, 446-47 (2nd Cir. 2012). But simply arguing that the "OEQ forms the subject of ongoing litigation" is not enough. (ECF No. 37 at 11.) Rather, Plaintiff must tether discrete claims and arguments to her assertion of unreliability in this specific case.

Indeed, there is nothing inherently suspect about the job source testimony simply because the VE relied on the OEQ. And, absent identification of a specific challenge, the VE's testimony appears to have the requisite "indicia of reliability." *See Biestek v. Berryhill,* 139 S. Ct. 1148, 1157 (requiring a case-by-case approach under which "all features of the vocational expert's testimony, as well as the rest of the administrative record" are considered). Here, the VE worked in the field for over 20 years and at the time of his testimony, Plaintiff, represented by able counsel, did not raise any objection to the source of job numbers or to the reliability of the VE's methodology. [9] Thus, other than citing to case law criticizing the OEQ, Plaintiff does nothing to

---

A: Occupational Employment Statistics Quarterly.

(Tr. 106.)

[8] The equal distribution method "estimates jobs in one job title by assuming that all job titles in a large category share the category's number of jobs equally." *Brace v. Saul,* 970 F.3d 818 (7th Cir. 2020) (citation omitted). The method has been criticized as "illogical" because it is based on "an assumption about the relative distribution of jobs within a broader grouping that lacks any empirical footing." *Chavez v. Berryhill*, 895 F.3d 962, 969-70 (7th Cir. 2018).

[9] In all the post-*Biestek* cases relied upon by Plaintiff, the claimant's attorney specifically questioned the vocational expert about his or her methodology. *See Goode v. Commr. of Soc. Sec.,* 966 F.3d 1277, 1279-80 (11th Cir. 2020) ("Mr. Goode's attorney pressed the vocational

develop her specific challenge to the VE's testimony regarding job number. As a result, the Court finds that the ALJ reasonably relied upon the VE's testimony and Plaintiff's challenge is without merit.

## IV. CONCLUSION & ORDER

Having reviewed the evidence of record, transcript of the administrative hearing, and the parties' arguments, the court finds that the ALJ's Decision is supported by substantial evidence and free of harmful legal error.

Accordingly, the ALJ's Decision is AFFIRMED and IT IS HEREBY ORDERED that judgment shall be entered favor of the Commissioner.

IT IS SO ORDERED.

DATED this 5th day of April 2021.

DUSTIN B. PEAD
United States Magistrate Judge

---

expert to explain how he arrived at his numbers."); Brace, 970 F.3d 820-821 ("Brace's attorney asked the vocational expert to explain his methodology" and argued that "the VE's job-number estimate lacked sufficient foundation and methodological rationality."); *Brault,* 683 F.3d 446 (2nd Cir. 2012); *but see Haddock,* 196 F.3d at 1090.